UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ACF RENEWABLE ENERGY LIMITED,

*Petitioner*,

v.

REPUBLIC OF BULGARIA,

*Respondent*.

No. 24-cv-1715 (DLF)

**MEMORANDUM OPINION**

ACF Renewable Energy Limited (ACF) brings this action for recognition and enforcement of an arbitration award entered by an international tribunal against the Republic of Bulgaria (Bulgaria). Compl. ¶ 1, Dkt. 3-1. Before the Court is Bulgaria's Motion to Dismiss, Dkt. 10, and ACF's Cross-Motion for Judgment on the Pleadings, Dkt. 11. For the reasons that follow, the Court will deny Bulgaria's motion and grant ACF's cross-motion.

**I.   BACKGROUND**

**A.   The Convention**

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 330 U.N.T.S. 3 (the Convention), established the International Centre for Settlement of Investment Disputes (ICSID) to administer arbitral proceedings. *See* Convention arts. 1–3, 25. Under the Convention, a contracting state or a national of a contracting state may request that ICSID convene an arbitral tribunal to consider the dispute and issue a written decision called an award. *Id.* arts. 36, 48. Awards entered by ICSID tribunals are binding on the parties. *Id.* arts. 53–54.

ICSID is "not empowered to enforce awards." *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-cv-102, 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018). But contracting states are required to "recognize an award . . . as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Convention art. 54(1).

The United States has been party to the Convention since 1966. 17 U.S.T. at 1270. Congress's implementing legislation confers federal district courts with exclusive jurisdiction to enforce ICSID awards and provides that awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a)–(b).

B.  **The Arbitration Proceedings**

In 2011, Bulgaria enacted a law that guaranteed renewable energy producers fixed feed-in electricity rates for 20 years. Compl. ¶ 9. Later that year, Bulgaria's energy regulator set a fixed rate that would apply to a proposed photovoltaic facility. *Id.* ¶ 10. ACF's predecessor in interest completed that facility in March 2012, *id.* ¶ 11, and Bulgarian authorities granted an electricity-production license, *id.* ¶ 12. But Bulgaria changed its energy-incentive scheme after ACF—a Malta-based corporation—purchased the company that owned the facility in June 2012. *Id.* ¶¶ 15–23. These changes, including new fees, levies, and production caps on renewable-energy producers, "greatly diminished the value of and return on ACF's investment." *Id.* ¶ 24.

ACF commenced ICSID arbitration proceedings against Bulgaria in February 2018. *Id.* ¶ 33. It invoked the Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 (ECT), to which Bulgaria and Malta are contracting parties, Int'l Energy Charter, *Contracting Parties and Signatories of the Energy Charter Treaty*, https://perma.cc/7H9W-XCFK. The ECT obligates

each contracting parties to protect investments made by investors of other contracting parties within its territory. ECT, arts. 1(7), 10(1). And it provides that contracting parties consent to arbitration of claims brought by an investor of another contracting party. *See id.* art. 26(4) ("In the event that an Investor chooses to submit the dispute . . . [to international arbitration], the Investor shall further provide its consent in writing for the dispute to be submitted to: (a)(i) The International Centre for Settlement of Investment Disputes."). Contracting parties give their "unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with" Article 26 of the ECT. *Id.* art. 26(3)(a).

A three-member ICSID tribunal convened in June 2018. Compl. ¶ 34. In a December 2019 preliminary decision, the tribunal concluded that a judgment of the Court of Justice of the European Union had not divested ICSID of jurisdiction over ECT disputes among EU members. Ex. E ¶ 236, Dkt. 1-5. The tribunal then heard the merits of ACF's claims and considered further briefing on Bulgaria's jurisdictional objection. Ex. A ¶¶ 89, 649, Dkt. 1-1.

In January 2024, the tribunal issued a unanimous, 540-page award. *Id.* ¶ 1843. The award began by affirming that an intervening Court of Justice of the European Union decision, *Republic of Moldova v. Komstroy LLC*, had not stripped its jurisdiction over the arbitration. *Id.* ¶¶ 1512–15. It then found that Bulgaria had violated the ECT by interfering with ACF's investment expectations about incentives guaranteed by the 2011 renewable energy law. *Id.* ¶ 1750–57. Finally, the award ordered Bulgaria to pay ACF the following award:

   a. EUR 61,040,000 in compensation, *id.* ¶ 1809;

   b. Pre-award interest on that amount, *id.* ¶¶ 1843(e);

   c. Post-award interest on the compensation amount, including pre-award interest, from the date of the award until paid, *id.* ¶ 1843(f);

3

  d. ACF's legal costs in connection with the arbitration (EUR 264,833.90 and USD 5,209,865.05), *id.* ¶ 1843(h); and

  e. ACF's share of the tribal and ICSID fees (USD 480,766.49), *id.* ¶ 1843(i).

Bulgaria did not seek annulment of the tribunal's award, and the deadline for doing so has passed. Compl. ¶ 48. Bulgaria has not paid any part of the award. *Id.* ¶¶ 47–48.

  **C. Procedural History**

ACF commenced this action on June 13, 2024, requesting that the Court recognize the arbitration award, enforce Bulgaria's pecuniary obligations, and "[e]nter judgment in ACF's favor and against Bulgaria in the amounts and currency denominations specified in the ICSID Award." Compl. ¶ 1. Bulgaria moved to dismiss, arguing that the arbitration exception in the Foreign Sovereign Immunities Act (FSIA) does not apply because it did not agree to arbitrate the dispute; that the Court lacks personal jurisdiction over it; and that the case should be dismissed under the doctrines of foreign sovereign compulsion and *forum non conveniens*. Mot. to Dismiss at 8–27, Dkt. 10. In the alternative, Bulgaria asked the Court to stay its decision pending final resolution of other cases before the D.C. Circuit and Supreme Court. *Id.* at 29–33. ACF cross-moved for judgment on the pleadings or summary judgment. Mot. J. Pleadings at 38–39, Dkt. 11.

**II. LEGAL STANDARDS**

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To prevail on a Rule 12(c) motion, the moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (citation modified). In evaluating a motion for judgment on the pleadings, the Court applies the same standard that governs motions to dismiss under Rule 12(b)(6). *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 203

4

(D.D.C. 2021).  The Court relies on "the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice," *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010), assuming the truth of "all of the well pleaded factual allegations in the adversary's pleadings" and taking as false "all contravening assertions in the movant's pleadings," *Tapp*, 306 F. Supp. 3d at 392 (citation modified).

Rule 12(b)(1) allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiff bears the burden of establishing that her case falls within that limited jurisdiction.  *Id.*  When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified).  A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (citation modified).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III.    ANALYSIS

#### A.    Subject-Matter Jurisdiction

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572, 1578 (2025) (citation modified).  It

grants federal district courts subject-matter jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a).[1]  "The FSIA creates a baseline presumption of immunity from suit." *Republic of Hungary v. Simon*, 604 U.S. 115, 131 (2025); *see* 28 U.S.C. § 1604.  But "if a plaintiff satisfies his burden of production [that an exception to immunity applies] and the defendant fails to present any evidence in rebuttal, then jurisdiction attaches." *Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017).

ACF invokes the FSIA's exception to sovereign immunity for arbitral awards.  That exception applies

> in any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).  "To proceed under this clause of the FSIA's arbitration exception, . . . a district court must find three 'jurisdictional facts': (1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement."  *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (citation modified).

---

[1] It is undisputed (1) that ACF brings a nonjury civil action to enforce an arbitral award; (2) that Bulgaria is a foreign state; and (3) that the action is in personam because the Court will exercise jurisdiction over the defendants as legal persons, rather than property.

The sole jurisdictional fact at issue here is the "existence of an arbitration agreement." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015).[2] ACF satisfies its burden of production as to the existence of an agreement by identifying the arbitration provision in Article 26 of the ECT. *See* Compl. ¶¶ 32, 40–45; Ex. C, Dkt. 1-3; ECT art. 26. Bulgaria does not contest that the ECT contains an arbitration agreement. It instead contends that judgments of the CJEU barring intra-EU arbitrations rendered Article 26 void "*ab initio*" among EU member states. Mot. to Dismiss at 12.

The D.C. Circuit's decision in *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain* forecloses Bulgaria's jurisdictional argument. Rejecting Spain's similar challenge to an ICSID award issued pursuant to Article 26 of the ECT, the court held that "district courts have jurisdiction to enforce [ECT] awards under the FSIA's arbitration exception" among EU members. *NextEra*, 112 F.4th at 1105. The panel explained that the intra-EU issue went to the *scope* of the ECT, but "disputes about the scope of an arbitration agreement, such as whether a binding arbitration agreement covers a particular dispute, are not jurisdictional questions under the FSIA." *Id.* at 1101. "To make the issue jurisdictional, the sovereign must attack the existence or validity of the arbitration agreement." *Id.* The D.C. Circuit thus concluded that, regardless of changes in EU law, Article 26 proved the existence of an arbitration agreement made by ECT signatories "'for the benefit'" of other signatory's investors. *Id.* at 1103 (quoting 28 U.S.C. § 1605(a)(6)).

Bulgaria's efforts to distinguish *NextEra* are unavailing. It argues that the decision is not binding because Spain did not advance the same "*ab initio*" argument. Mot. to Dismiss at 12. But the D.C. Circuit's interpretations of Article 26 of the ECT and § 1605(a)(6) of the FSIA are binding

---

[2] Bulgaria does not dispute (1) that ACF has obtained an arbitration award under ICSID; (2) that the Convention governs enforcement of ICSID awards, *see* Convention art. 54; (3) or that it, Malta, and the United States are parties to the Convention.

7

on the Court regardless of the parties' arguments. At any rate, Bulgaria's *ab initio* argument is nothing more than a latinized version of Spain's contention that Article 26 cannot compel arbitration among EU nationals. *See NextEra*, 112 F.4th at 1103. And the Court will not entertain Bulgaria's suggestion that *NextEra* was wrongly decided, Mot. to Dismiss at 12-13, because it is "obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule it," *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). Accordingly, ACF's claim falls within the FSIA's arbitral-award exception and the Court has subject-matter jurisdiction over this action.[3]

### B. Personal Jurisdiction

The FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under subsection (a) where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). "The most natural reading of § 1330(b) is that personal jurisdiction over a foreign sovereign is automatic whenever (1) an exception to immunity applies and (2) service of process has been accomplished." *Antrix Corp.*, 145 S. Ct. at 1580.

The Court has personal jurisdiction over Bulgaria. As explained, the FSIA's arbitration exception applies to these proceedings. And Bulgaria acknowledges that ACF has effected service of process in accordance with the FSIA. *See* Dkt. 9 at 1. Because "personal jurisdiction rises and falls based on whether an immunity exception applies and the plaintiff has effectuated proper service," *Antrix Corp.*, 145 S. Ct. at 1582, Bulgaria's jurisdictional arguments fail.

---

[3] Because the Court concludes that the arbitration exception applies, the Court does not reach ACF's alternative argument that the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1), applies.

## C. *Forum Non Conveniens*

"[B]inding circuit precedent dictates that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States." *NextEra*, 112 F.4th at 1105 (citation modified). Bulgaria nevertheless contends that the D.C. Circuit's caselaw "was wrongly decided" and points to other circuits that have dismissed award-enforcement suits under *forum non conveniens*. Mot. to Dismiss at 27. Because "the Court is bound by the decisions of the D.C. Circuit," *Elec. Frontier Found. v. DOJ*, 384 F. Supp. 3d 1, 1 n.5, it will reject Bulgaria's *forum non conveniens* challenge.

## D. **Foreign Sovereign Compulsion Doctrine**

"International comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (citation modified). The foreign sovereign compulsion doctrine, which is a comity-based defense, "focuses on the plight of a defendant who is subject to conflicting legal obligations under two sovereign states and recognizes that a defendant trying to do business under conflicting legal regimes may be caught between the proverbial rock and a hard place where compliance with one country's laws results in violation of another's." *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 544 (E.D.N.Y. 2011) (citation modified).

International comity plays a limited role in ICSID enforcement proceedings, if any at all. Under the Convention, a contracting state's courts "must recognize an award rendered pursuant to the Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023) (citation modified). The

Court thus "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Id*. (citation modified).

Bulgaria's compulsion concerns cannot defeat the United States' obligations under the Convention. Bulgaria says that enforcement of the award would violate EU competition laws that restrict the provision of "State aid" to private industry. Mot. to Dismiss at 19. And it reiterates that EU law barred the arbitration in the first place. *Id.* But the tribunal has already heard—and rejected—these arguments. On the merits, the tribunal held that enforcement of the award "did not constitute unlawful EU State aid." Ex. A ¶ 1658. And, as discussed, the tribunal twice rejected Bulgaria's jurisdictional objections. *See* Ex. E ¶ 236; Ex. A ¶¶ 1512–15. Contracting states' courts are "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Valores Mundiales*, 87 F.4th at 515 (citation modified). The Convention thus affords this Court no discretion to entertain Bulgaria's complaints about the tribunal's judgment on these issues.

Nor has Congress conferred upon federal courts discretion to refuse to enforce ACF's award. Congress's implementing language instructs federal courts to give ICSID awards "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). Bulgaria offers no ground for the Court to deny the award such recognition. The full faith and credit obligation owed to final judgments of state courts "precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (per curiam) (citation modified); *see* 28 U.S.C. § 1738. The Court thus cannot second-guess the tribunal's rejection of Bulgaria's EU state-aid arguments. Moreover, "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second

10

court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111 (1963).  Because Bulgaria fully and fairly litigated its jurisdictional objections before the tribunal, the award is entitled to full faith and credit under § 1650a(a).

Section 1650a accounts for—and forecloses—Bulgaria's comity objections.  The Supreme Court's comity precedents "caution[] courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004).  Therefore, "comity concerns are essentially 'baked in' to the ICSID Convention and its implementing statute." *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-cv-2701, 2024 WL 4298808, at *13 (D.D.C. Sept. 26, 2024).  Congress implemented the Convention, an agreement about the enforcement of judgments against other sovereigns, with mandatory language.  *See* 22 U.S.C. § 1650a(a) ("The pecuniary obligations imposed by such an award *shall* be enforced and *shall* be given the same full faith and credit." (emphases added)).  Congress then specified that the "Federal Arbitration Act shall not apply to enforcement of awards rendered pursuant to the convention," *id.*, "thus reducing the scope of judicial review of ICSID awards below even the extremely limited review available under [that Act]," *Valores Mundiales*, 87 F.4th at 520 (citation modified).

The Court has no discretion to defy the Convention or Congress's direction that it "shall" enforce ICSID awards.  22 U.S.C. § 1650a(a); *accord MOL Hungarian Oil & Gas PLC v. Republic of Croatia*, No. 23-cv-218, 2025 WL 1134945, at *6 (D.D.C. Apr. 16, 2025); *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 20-cv-817, 2025 WL 2336428, at *8 (D.D.C. Aug. 13, 2025) ("[A] court cannot decline to recognize a foreign tribunal's judgment on the basis of comity if the court is legally obligated to recognize that judgment.").  Because Bulgaria offers no grounds to

11

deny ACF entry of its ICSID award pursuant to § 1650a, the Court will grant ACF's motion for judgment on the pleadings and enter a judgment for enforcement of the award in the United States.

### E. Stay of Proceedings

"In the case of independent proceedings, a stay may be warranted where the resolution of other litigation will likely 'narrow the issues in the pending cases and assist in the determination of the questions of law involved.'" *Hully Enter. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936)). Bulgaria asks for a stay because the Supreme Court may grant certiorari and reverse the D.C. Circuit's decision in *NextEra*. *See* Dkt. 13 at 25. But the Court is "obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule it." *Torres*, 115 F.3d at 1036. Accordingly, the Court will deny Bulgaria's alternative motion for a stay.[4]

### CONCLUSION

For the foregoing reasons, Bulgaria's Motion to Dismiss, and in the Alternative, for a Stay, Dkt. 10, is denied and ACF's Cross-Motion for Judgment on the Pleadings or Summary Judgment, Dkt. 11, is granted. A separate order consistent with this decision accompanies this memorandum opinion.

September 22, 2025

DABNEY L. FRIEDRICH
United States District Judge

---

[4] Short of a stay, Bulgaria belatedly argues that the Court should decide its jurisdictional objections without reaching the merits. Dkt. 15 at 4–5. But, unlike the defendant sovereign in *CEF Energia, B.V. v. Italian Republic*, No. 19-cv-3443, Dkt. 99, Bulgaria forfeited any argument for bifurcated jurisdictional/merits proceedings by asserting merits defenses in its motion to dismiss.